# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CXOsync, LLC, | ) |
|              Plaintiff, | ) |
| v. | ) Case No. 1:23-cv-190 |
| CXO Inc. and Harshil Shah, | ) |
|              Defendants. | ) |

## COMPLAINT FOR
## TRADEMARK INFRINGEMENT,
## UNFAIR COMPETITION, AND DECEPTIVE TRADE PRACTICES

### PARTIES

1. Plaintiff, CXOsync, LLC (CXOsync), is an Illinois limited liability company with its principal place of business 1900 E. Golf Rd, Suite 500, Schaumburg, Illinois 60173.

2. On information and belief Defendant CXO Inc., is an Illinois corporation with its principal place of business at 1900 E. Golf Rd, Suite 950, Schaumburg, Illinois 60173.

3. On information and belief, Defendant Harshil Shah ("Shah"), is an individual residing in Chicago, Illinois.

### JURISDICTION AND VENUE

4. This court has jurisdiction pursuant to the Trademark Laws of the United States, 15 U.S.C. §1121, 28 U.S.C. §1331, 28 U.S.C. §1338, and 28 U.S.C. §1367. Venue is proper pursuant to 28 U.S.C. 1391(b)(1) and (2) because the Defendants reside in this judicial district, and a substantial part of the events giving rise to the claims alleged herein took place in this judicial district.

FACTS

5. CXOsync was organized on November 10, 2008. A copy of the Illinois Secretary of State's Corporation/LLC Search for CXOsync is attached as Exhibit 1.

6. Since 2008, CXOsync has hosted in-person conferences and private events to gather leaders from a broad cross-section of corporations and brands. CXOsync is a leading provider of corporate marketing events connecting technology vendors with C-Level executives.

7. Since it was created in 2008, CXOsync used and continues to use, advertise, and promote its name, CXOsync, and its trademark, CXOSYNC.

8. Additionally, CXOsync markets its flagship event using the name CIO SYNERGY and the following mark:



9. CXOsync has a registered trademark for the word "CIOSYNERGY" with the United States Patent and Trademark Office, Reg. No. 4647721. A copy of the federal trademark registration is attached as Exhibit 2.

10. CXO has invested more than $30,000,000 building its brand and promoting its name and marks throughout the United States, Europe, and Asia.

11. CXOsync's name and marks are distinctive, and well-recognized among its customer base. CXOsync's name and marks possess a strong secondary meaning and represent extremely valuable goodwill.

12. Shah is a former employee and manager of CXOsync. He began his employment with CXOsync in or around 2008 and worked closely with CXOsync's founder, Nepal Patel.

13. On August 21, 2021, CXOsync's founder died. In December 2021, the founder's brother, Rupen Patel, became the of CEO of CXOsync.

14. Shah was upset with the selection of Rupen Patel as CEO because Shah expected to be named the new CEO of CXOsync.

15. Throughout his employment at CXOsync, Shah's behavior was disruptive. During his employment, several employees of CXOsync resigned because of Shah's abusive behavior.

16. On August 11, 2022, CXOsync terminated Shah because of his disruptive, abusive, and unacceptable behavior.

17. Prior to his termination, and without CXOsync's knowledge, Shah created a competing company named CXO Inc. CXO Inc. was created on December 22, 2021, the same month Rupen Patel became the new CEO of CXOsync. A copy of the Corporation/LLC Search for CXO Inc. is attached as Exhibit 3.

18. CXO Inc. advertises that it is in the business of hosting conferences, dinners, and events for corporate executives. Therefore, CXO Inc. directly completes with CXOsync.

19. After his termination from CXOsync, Shah misrepresented to the public, on social media platforms such as LinkedIn, that he still works for CXOsync. A copy of Shah's LinkedIn page is attached as Exhibit 4.

20. LinkedIn is the primary channel by which Shah advertised CXOsync's services to potential clients when he was employed by CXOsync.

21. After Shah's termination, CXOsync discovered the existence of domain names, landing pages, and web addresses that are similar to CXOsync's domain name. CXOsync owns and uses the domain name and web address: www.cxosync.com. Recently, CXOsync discovered

the existence of the following similar domain names and web addresses: www.cisosync.com and www.ciosync.com.

22. A review of the websites for www.cisosync.com and www.ciosync.com reveal images that were taken from CXOsync's website. Additionally, the photographs of the speakers that are on these two websites were taken at CXOsync's events.

23. Recently, CXOsync discovered the following mark that is confusingly similar to the mark it uses for its flagship event, CIO SYNERGY. Compare CXOsync's mark on the left with the image used by the CIOsync on the right:

 

24. Upon information and belief, Shah and CXO Inc. created, or caused to be created, the domain names www.cisosync.com and www.ciosync.com.

25. Upon information and belief, Shah and CXO Inc. created, or caused to be created, the image in paragraph 23 for CIOsync.

26. The actions of Shah and CXO Inc. caused and will continue to cause confusion among CXOsync's customers and the public. In September 2022, a customer sent a $22,000 check to CXOsync for services, but CXOsync did not have a current contract for the services the customer was paying. The customer explained that the check was intended to be sent to Shah and that the customer signed a contract with CXO Inc. The customer explained, "We were invoiced from CXO Inc. and sent a check to CXO Inc. with address nearly the same as yours." In a later email, the customer wrote "You can destroy the check. I called Harshil. It appears that the lack of a suite # when we mailed the check resulted in the mail person in your building

4

delivering the CXO Inc. mail to you at CXOsync." A copy of the 9/22/2022 email string is attached as Exhibit 5.

27. On September 23, 2022, another customer contacted CXOsync to inquire about a dinner that CXO Inc. advertised that will take place in New York on December 1, 2022. The email string begins with an invitation from Paizley Snyder at CIOsync. A copy of the email string is attached as Exhibit 6.

28. The name Paizley Snyder is the preferred professional name of an individual named Pooja Shah, who was an employee of CXOsync when this email was sent to the customer. Ms. Pooja Shah denies working for Shah and denies that she authorized Shah to use her professional name or to create a CIOsync email account in her professional name.

29. The company Shah created is now marketing events under the name "CIOMeet" and "CISOMeet." *See* Exhibits 7 and 8.

30. On December 21, 2022, a customer contacted CXOsync for an update on an event. The customer said, "I am receiving emails from Sara Makwana about CIOMeet events, but previously was receiving emails from her about CIOSynergy events. The information in her emails is almost identical for both." A copy of the email is attached as Exhibit 9.

31. The websites for CIOsync and CISOsync reflect that they are both owned by CXO Inc., the company Shah created. The following language appears on the CIOsync website: "© CXO Inc. All rights reserved." *See* attached Exhibit 10.

32. According to their websites, the address for CIOsync and CISOsync is 1900 E. Golf Rd, Suite 950, Schaumburg, Illinois 60173. CXOsync's address is 1900 E. Golf Rd, Suite 500, Schaumburg, Illinois 60173. *See* attached Exhibits 10 and 11.

5

33. Shah's use of a business address for CXO Inc., CIOsync, and CISOsync in the same building as CXOsync was intentionally designed to create confusion and leverage CXOsync's name recognition.

34. Shah and CXO Inc. are improperly and illegally competing with CXOsync.

35. Shah and CXO Inc. are using CXOsync's name and trademark without CXOsync's consent or authorization.

36. The actions complained of herein by Shah and CXO Inc. were intentional and willful.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

37. CXOsync repeats and realleges the allegations in paragraphs 1 through 36 as though fully set forth herein.

38. As a result of their unauthorized use of CXOsync's name and trademark, Shah and CXO Inc. are likely to and are causing confusion or mistake or to deceive the public, in violation of federal trademark law.

39. As a result of their unauthorized use of CXOsync's trademark, Shah and CXO Inc. are likely to and are misleading prospective customers as to the affiliation, connection, or association of CXO Inc.'s services with CXOsync's services, or as to the origin, sponsorship or approval of CXO Inc.'s services, including the services offered under the names CIOsync and CISOsync.

40. Shah's and CXO Inc.'s acts were undertaken in bad faith and in a deliberate attempt to capitalize on the goodwill and reputation of CXOsync's trademark, and to mislead the public into believing that there is a connection, affiliation, or association between CXOsync and Shah, CXO Inc., CIOsync and CISOsync.

41. Because of Shah's and CXO Inc.'s acts, CXOsync suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain loss of revenues and profits.

42. Unless enjoined by this Court, Shah and CXO Inc. will continue to perform the improper and illegal acts complained of herein and cause damages and injury, all to the immediate and irreparable harm of CXOsync, for which CXOsync has no adequate remedy at law.

## COUNT II
## COMMON LAW TRADEMARK INFRINGEMENT

43. CXOsync repeats and realleges the allegations in paragraphs 1 through 36 as though fully set forth herein.

44. As a result of their unauthorized use of CXOsync's name and trademark, Shah and CXO Inc. are likely to and are causing confusion or mistake or to deceive the public.

45. As a result of their unauthorized use of CXOsync's trademark, Shah and CXO Inc. are likely to and are misleading prospective customers as to the affiliation, connection, or association of CXO Inc.'s services with CXOsync's services, or as to the origin, sponsorship or approval of CXO Inc.'s services, including the services offered under the names CIOsync and CISOsync.

46. Shah's and CXO Inc.'s acts were undertaken in bad faith and in a deliberate attempt to capitalize on the goodwill and reputation of CXOsync's trademark, and to mislead the public into believing that there is a connection, affiliation, or association between CXOsync and Shah, CXO Inc., CIOsync and CISOsync.

47. Because of Shah's and CXO Inc.'s acts, CXOsync suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain loss of revenues and profits.

48. Unless enjoined by this Court, Shah and CXO Inc. will continue to perform the improper and illegal acts complained of herein and cause damages and injury, all to the immediate and irreparable harm of CXOsync, for which CXOsync has no adequate remedy at law.

## COUNT III
## DECEPTIVE TRADE PRACTICES

49. CXOsync repeats and realleges the allegations in paragraphs 1 through 36 as though fully set forth herein.

50. As a result of the unauthorized use of CXOsync's trademark in connection with the services offered by Shah and CXO Inc., including the services offered under the names CIOsync and CISOsync, Shah and CXO Inc. are likely to cause, and are causing, confusion or mistake, and are likely to deceive, and are deceiving, the public, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq*. ("Deceptive Trade Practices Act").

51. Shah's and CXO Inc.'s actions are likely to mislead, and are misleading, prospective customers as to an affiliation, connection, or association of CXOsync with Shah, CXO Inc., CIOsync, and CISOsync, or as to the origin, sponsorship, or approval of Shah, CXO Inc., CIOsync and CISOsync, causing customers to rely thereon, in violation of the Deceptive Trade Practices Act.

52. Shah's and CXO Inc.'s acts were undertaken in bad faith and in a deliberate attempt to capitalize on the goodwill and reputation of CXOsync's name and trademark, and to

8

mislead the public into believing that there is a connection, affiliation, or association between CXOsync and Shah, CXO Inc., CIOsync and CISOsync.

53. Because of Shah's and CXO Inc.'s acts, CXOsync has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain loss of revenues and profits.

54. Unless enjoined by this Court, Shah and CXO Inc. will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of CXOsync, for which CXOsync has no adequate remedy at law.

## COUNT IV
## ILLINOIS CONSUMER FRAUD ACT

55. CXOsync repeats and realleges the allegations in paragraphs 1 through 36 as though fully set forth herein.

56. At all times relevant, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.* ("Consumer Fraud Act") was in effect.

57. The Consumer Fraud Act states, in part, that unfair methods of competition and unfair or deceptive acts or practices, including "the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" in the conduct of any trade or commerce, are unlawful whether any person has in fact been misled, deceived or damaged. *See* 815 ILCS 505/2.

58. Shah and CXO Inc. engaged in, and continue to engage in, unfair methods of competition and unfair or deceptive acts or practices, including: (a) passing off goods or services as those of another; (b) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; and (c) causing likelihood of

9

confusion or of misunderstanding as to affiliation, connection, or association with or certification by another.

59. Because of Shah's and CXO Inc.'s acts, CXOsync has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, with a loss of revenues and profits.

## COUNT IV
## ANTI-CYBERSQUATTING PIRACY ACT

60. CXOsync repeats and realleges the allegations in paragraphs 1 through 36 as though fully set forth herein.

61. The federal Anti-Cybersquatting Piracy Act ("ACPA") prohibits bad faith registration, trafficking, or use of a domain name that is "identical or confusingly similar to" a mark that is "distinctive at the time of registration of the domain name." 15 U.S.C. § 1125(d).

62. CXOsync had a distinctive name and mark when it registered the domain name of www.cxosync.com.

63. Shah and CXO Inc. registered, trafficked in, or used the domain names www.ciosync.com and www.cisosync.com, that are nearly identical and confusingly similar to CXOsync's domain name.

64. Shah and CXO Inc. had a bad faith intent to profit from CXOsync's domain name.

65. Because of Shah's and CXO Inc.'s acts, CXOsync has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, with a loss of revenues and profits.

WHEREFORE, CXOsync prays for a judgment:

1. Permanently enjoining and restraining Harshil Shah and CXO Inc, its officers, agents, employees, representatives, and all others acting in concert or participation with any of them from:

    (a) using CXOsync's trademarks or any other colorable imitation of the mark, including CIOsync and CISOsync, or any mark that is confusingly similar to CXOsync;

    (b) using CXOsync's domain name or any similar domain name including www.ciosync.com, www.cisosync.com, and any domain name that is confusingly similar to www.cxosync.com; and

    (c) doing any other act or thing likely to induce the belief that Harshil Shah's and CXO Inc.'s business or products are in any way connected with CXOsync's business or products or are sponsored or approved by CXOsync.

2. Directing Harshil Shah and CXO Inc. to:

    (a) account for and pay to CXOsync all profits derived by the acts complained of herein, together with prejudgment interest;

    (b) pay to CXOsync all the damages it has suffered as a result of the acts complained of herein, including an assessment of trebled actual damages, together with prejudgment interest;

    (c) pay to CXOsync its attorneys' fees and costs in this action; and

    (d) file with this Court and serve on Plaintiff's counsel, within 30 days after entry of an injunction issued by this Court, a sworn written statement as provided in 15 U.S.C. §1116.

3. Awarding CXOsync such further relief as this Court deems just and equitable.

Respectfully submitted,

**CXOSYNC, LLC**

By: s/ Ronald Austin, Jr.

Ronald Austin, Jr.
GRANT LAW, LLC
230 W. Monroe Street, Suite 240
Chicago, IL 60606
(312) 551-0111
raustin@grantlawllc.com