UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CXOSYNC, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 23 C 00190 |
| | ) |
| SULAIMAN SALOOJEE, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff CXOsync, LLC, a marketing events planner, alleges that its former employee, Defendant Sulaiman Saloojee, is using Plaintiff's trademark to conduct a competing business.[1] The complaint charges Saloojee with trademark infringement, unfair competition, deceptive trade practices, and cybersquatting [36]. Saloojee, who resides in the United Kingdom, previously moved to dismiss Plaintiff's claims against him for lack of personal jurisdiction [79]; the court denied that motion without prejudice. [87]. Saloojee has now moved for judgment on the pleadings on the same basis. For the reasons explained here, the motion [104] is denied.

## BACKGROUND

### I. Allegations of the Complaint

In assessing Saloojee's motion for judgment on the pleadings, the court must take as true all well-pleaded facts alleged in the complaint. *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018) (citation omitted). Plaintiff describes itself as "a leading provider of corporate marketing events connecting technology vendors with C-Level executives based in Chicago, Illinois." (First Amended Compl. ("FAC") [36] ¶ 8.) Plaintiff hired Saloojee, a U.K. resident (*id.* ¶ 4), in June 2018 to "work on private dinner event sales" in Europe and in the U.K. using the CXOsync brand. (*Id.*

---

[1] Plaintiff's complaint named additional Defendants as well: another business with a similar name, CXO Inc., and its owner, Harshil Shah. Plaintiff has settled its claims with those Defendants. [121].

¶ 43.)  Plaintiff alleges that the "promotion and sales" Saloojee worked on "included or were directed to customers in the U.S.," but does not offer more details.  (*Id.*)

In March 2023, Plaintiff learned that Saloojee was selling event services on his own, using the CXOsync brand without its consent; Plaintiff immediately fired Saloojee.  (*Id.* ¶¶ 44–45.) Saloojee then allegedly proceeded to "set up a new company in the U.K. which he operated for the purpose of impersonating Plaintiff and contacting its customers and misleading them into doing business with Saloojee." (*Id.* ¶ 45.)  This company, Plaintiff alleges, is called CXOsync UK Ltd., and is controlled by Saloojee, though Saloojee has formally named an associate, believed to be his girlfriend, as director of the company.  (*Id.*)  Plaintiff further alleges that Saloojee operates "interactive websites which are purposefully directed at Illinois residents," promotes and sells competing services to Illinois residents, and uses the Internet "to send electronic communications containing false and misleading statements" within Illinois.  (*Id.* ¶ 6.)  This conduct, Plaintiff alleges, violates Illinois common law and the Lanham Act, 15 U.S.C. § 1051, *et seq.*; constitutes deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.* and Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; and is prohibited by the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).  (Compl. ¶¶ 62–89.)

II.     **Supplemental Personal Jurisdiction Evidence**

Saloojee initially raised this personal jurisdiction challenge in a motion to dismiss, which the court denied without prejudice.  ([79], [87].)  Saloojee's instant motion relies on the same affidavits he submitted in support of that previous motion.  (*See* Mot. [104] at 10; First Saloojee Aff. [79-1]; Second Saloojee Aff. [85-1].)  Saloojee asserts he has resided in Surrey, U.K., at all times relevant to this suit, and works as an "event director" for "CXOSYNCUK LTD" (hereinafter "CXOsync UK"), a company based in London, U.K.  (First Saloojee Aff. ¶¶ 2, 6.)  Saloojee confirms that CXOsync UK "hosts private events" in the U.K. and online events for the U.K. market.  (*Id.* ¶¶ 7.)  He also asserts that he is the registered owner of a "CXOSYNC" trademark in the U.K. and

European Union and that in April 2023, he filed an application with the U.S. Patent and Trademark Office for the trademark "CXOSYNC." (*Id.* ¶¶ 3–5.)

Saloojee contends that he has no contacts in Illinois sufficient to support the exercise of jurisdiction over him. He denies conducting any business or selling any services in Illinois, operating any websites purposefully targeted at Illinois, entering into any contracts in Illinois, owning or leasing any property in Illinois, maintaining an agent for service of process in Illinois, maintaining a bank account in Illinois, or earning any income in Illinois. (*See id.* ¶¶ 8–19.) Saloojee concedes that on a single occasion, CXOsync UK "advertised one event which was to occur in Chicago" but maintains that the event was cancelled and never took place. (*Id.* ¶ 12.)

Where a defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiffs must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (citation omitted). Plaintiff now presents effectively the same evidence that was before the court when it opposed Saloojee's motion to dismiss. First, Plaintiff asserts that Saloojee operates a website, www.cxo-sync.com, with an address that is almost identical to Plaintiff's own (www.cxosync.com). (Opp. [114] at 3.) Plaintiff has submitted a series of screenshots from Saloojee's website. (*See generally* [114-1].) One screenshot is taken from a landing page on the website, cxo-sync.com/events, that describes the company as hosting "live and virtual events to gather CXOs from the world's largest corporations and brands"; the page identifies a London address as the company's headquarters, but also lists a handful of additional locations: Los Angeles, CA; New York, NY; Miami, FL; Chicago, IL; and (without specifying any city), Singapore and India. (*See id.* at 3.) Another screenshot, taken from an "events calendar" on the website, shows an event

titled CISOsync CHICAGO scheduled to take place in Chicago on August 1, 2024, as well as an event titled CMOsync MIAMI scheduled to take place in Miami on August 8, 2024.  (*Id.* at 5.)[2]

Plaintiff also asserts that through an "associate[]" named Mital Patel (another alleged former employee of Plaintiff's), Saloojee contacted one or more of Plaintiff's customers.  (Opp. at 8.)  Plaintiff has submitted an excerpt from an email purportedly showing this contact:  the email comes from a "Mital P.," and the signature block in the email identifies the sender as a "Business Development Director" and provides a link to www.cxo-sync.com.  (*See* [114-3] at 1.)  Plaintiff does not assert that the customer Mital Patel contacted was based in Illinois, but in an affidavit submitted to the court, Plaintiff's CEO—a man named *Rupen* Patel—asserts without further specifics that Saloojee's associate *Mital* Patel "resides in Illinois." (Opp. at 2; Rupen Patel Decl. [84-1] ¶ 5.)  For his part, Saloojee concedes that Mital Patel was "briefly associated with CXOsync UK Ltd in 2023," but asserts that Mital is no longer associated with the company in any way; Saloojee does not deny, however, that Mital resided in Illinois while he was associated with CXOsync UK.  (Second Saloojee Aff. at ¶¶ 6–9.)

Plaintiff has also submitted copies of October 2023 emails between Saloojee and another of Plaintiff's customers, a company called Uptycs; the communications appear to concern an event to be held in San Francisco, California.  (*See generally* [84-4].)  Saloojee's email signature identifies him as "ABM Director Private Events" and lists a London address for CXOsync UK that matches the address listed on the cxo-sync.com webpage.  (*Id.* at 2–3.)

Finally, Plaintiff submits screenshots from the LinkedIn webpage for CXOsync UK, which identifies the company's website as www.cxo-sync.com and lists Saloojee (going by the shortened first name "Sulai") as an employee.  (*See* [114-2].)  Moreover, according to the

---

[2]     The acronyms are not explained, but the court understands these events as being aimed at different management tiers—for example, Chief Information Security Officers or Chief Marketing Officers.

screenshots submitted by Plaintiff, Saloojee's LinkedIn profile holds him out as "Leading All Events at CXOsync in EMEA, North America & APAC."[3]  (*Id.*)

## LEGAL STANDARD

Plaintiff bears the burden of establishing the court's personal jurisdiction over Saloojee. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (citation omitted).  Where, as here, a district court bases its determination solely on written submissions and not an evidentiary hearing, a plaintiff must only make a prima facie showing of personal jurisdiction over the defendant to survive a challenge.  *Id.* (citation omitted).  In making this prima facie showing, the plaintiff "is entitled to the resolution of all disputes concerning relevant facts presented in the record."  *Purdue Rsch. Found. v. Sanofi-Synthelabo*, *S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citation omitted).

## DISCUSSION

At the outset, the court notes that as a formal matter, "asserting a personal jurisdiction defense in a Rule 12(c) motion is improper."  *Mussat v. Enclarity, Inc.*, 362 F. Supp. 3d 468, 472 (N.D. Ill. 2019); *see also Walker v. Carnival Cruise Lines, Inc.*, No. 87 C 115, 1987 WL 19554, at *9 n.1 (N.D. Ill. Nov. 5, 1987) (citation omitted) ("[a] Rule 12(c) motion is an inappropriate vehicle for preliminary matters such as jurisdiction or venue, being ordinarily used for judgments on the merits of a complaint.")  Nonetheless, the court may, and will, convert the Rule 12(c) motion to an untimely Rule 12(b)(2) motion, and forgive the tardiness to reach the merits.  *See Mussat*, 362 F. Supp. 3d at 472–73.

This case involves claims under both federal and state law.  In cases involving federal question jurisdiction, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant."

---

[3]    The court understands "EMEA" and "APAC" to refer to Europe, the Middle East, and Africa, and the Asia-Pacific region, respectively.

*Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). Illinois's long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. *Id.* (citation omitted). The court therefore considers whether the exercise of personal jurisdiction over Saloojee "comports with the limits imposed by federal due process." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

In construing those limits, the Seventh Circuit has explained that specific personal jurisdiction is appropriate where (1) a defendant has purposefully directed their activities at the forum state or purposefully availed themselves of the privilege of conducting business in that state, and (2) the plaintiff's alleged injury arises out of the defendant's forum-related activities. *Matlin*, 921 F.3d at 705–06 (citations omitted). To the extent the defendant's purported contacts with the forum state consist of online activity, the inquiry "boils down to" whether the defendant has "purposefully exploited" or "targeted" the forum state's market in a manner beyond operating an interactive website accessible in the forum or sending emails to people who may happen to live there. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014) (citation omitted).

On this record, the court concludes Plaintiff has made a modest but sufficient showing that CXOsync UK purposefully targeted the Illinois market. Plaintiff's allegations and the evidence it has submitted in response to Saloojee's motion allow the court to reasonably infer (1) that CXOsync UK intended to hold an event in Chicago and advertised that event on its website; (2) that CXOsync UK, via its website, held itself out as doing business in, or at least capable of operating in, Chicago; and (3) that CXOsync UK employs, or has employed, at least one associate—Mital Patel—in Illinois. On Plaintiff's account, CXOsync UK did more than operate a website that was merely accessible to people in Illinois or send out mass communications that happened to reach people living in Illinois. CXOsync UK also did more than merely "set out to trade on the reputation and goodwill of an Illinois entity"—it set out to trade on the reputation and goodwill of an Illinois entity *in Illinois*. *Cf. Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d

6

520, 521 (7th Cir. 2018) (defendant who did not advertise in Illinois and had no clients or staff in Illinois was not subject to personal jurisdiction based merely on allegations that it had deliberately infringed the intellectual property rights of the plaintiff, an Illinois company).

Saloojee urges that the "mere presence of a location listing on a website is insufficient to establish that a company engaged in business activities within a jurisdiction" and notes that Plaintiff has not presented evidence that any CXOsync UK events in Chicago actually occurred or that Saloojee had anything to do with them. (Mot. at 11–12.) Saloojee also argues that "the evidence that Plaintiff has presently [is] almost wholly related to CXOsync UK," and that Plaintiff "has not supplied sufficient evidence connecting CXOsync [UK]'s actions to Saloojee personally." (*Id.* at 13.)

Saloojee is correct that Plaintiff has presented no evidence the August 2024 Chicago event took place—but the point is that Plaintiff's evidence suggests this was not for lack of trying.[4] The court need not decide whether listing Chicago as a location of operations, alone, would establish minimum contacts with Illinois on the part of CXOsync UK. Moreover, the record at this stage *does* support the inference that Saloojee was involved in—and indeed, led—CXOsync UK's efforts to advertise and host an event in Chicago. Based on the copies of emails purportedly sent by Saloojee and the LinkedIn screenshots, the court can infer that Saloojee had final responsibility for events taking place in North America. The court also notes that Saloojee's declaration does not rebut Plaintiff's allegation that Saloojee controls the operations of CXOsync UK as a whole, despite naming an associate who may be his girlfriend as the company's director. Whether Saloojee can ultimately be held liable for online conduct directed by him but formally attributable

---

[4] That Saloojee or another representative of CXOsync UK merely *attended* an event in Chicago would not, on its own, establish personal jurisdiction. *See Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F. Supp. 3d 881, 889 (N.D. Ill. 2020) (collecting cases and concluding that defendant attending a single trade show in the forum was insufficient to establish personal jurisdiction). But advertising and organizing such an event in Chicago is a different story.

to CXOsync UK is a merits question.[5]  With respect to personal jurisdiction, Plaintiff has made the requisite showing that Saloojee had minimum contacts with the state of Illinois.

Plaintiff has also made a prima facie case that its alleged injuries arise out of Saloojee's Illinois-related contacts.  The bar for such a showing is a low one, where Plaintiff has alleged harm to its business, reputation, and goodwill stemming from consumers' likely confusion as to the difference between Plaintiff's business and Saloojee's.  To have caused such confusion, the August 2024 Chicago event need not have come to fruition—it is enough if the "relevant group of buyers" of such events in Chicago and Illinois more broadly could have thought *Plaintiff* was the company running the website and organizing the event, which is what Plaintiff alleges.  *F. Corp. of N. Am. v. F., Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990).  Similarly, Plaintiff can meet this bar by alleging, as it has, that its customers were likely to be confused by receiving communications sent by Mital Patel while he was based in Illinois and working on behalf of Saloojee.

## CONCLUSION

For the reasons explained above, Saloojee's motion for judgment on the pleadings for lack of personal jurisdiction [104] is denied.

ENTER:

Dated: June 6, 2025

_____
REBECCA R. PALLMEYER
United States District Judge

---

[5]     Under Illinois law, officers, shareholders, and directors are generally not liable for the corporation's obligations, but corporate officers may be liable for torts if they "participated in the conduct giving rise to that liability."  *Itofca, Inc. v. Hellhake*, 8 F.3d 1202, 1204 (7th Cir. 1993) (citations omitted); *accord Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶ 88, 109 N.E.3d 811, 830.